UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
TRUSTEES OF THE LOCAL 111 PENSION TRUST FUND,   REPORT AND
                          Plaintiffs,   RECOMMENDATION
            - against –
MANHATTAN IGNITION CORP.,   19-CV-6888 (RPK) (JO)
                    Defendant.
--------------------------------------------------------------------------------X

James Orenstein, Magistrate Judge:

The Trustees of the Local 111 Pension Trust Fund (the "Trustees" of the "Fund") have sued

defendant Manhattan Ignition Corp. ("MIC") for damages arising from MIC's alleged failure to

make timely payment of its withdrawal liability to the Fund. Docket Entry ("DE") 1 (Complaint).

MIC never responded to the Complaint, and the Trustees therefore now seek a default judgment.

DE 10. Upon a referral from the Honorable Rachel P. Kovner, United States District Judge, I now

make this report and, for the reasons set forth below, respectfully recommend that the court grant

the motion and enter default judgment in the total amount of $67,893.34 (consisting of $46,648.00

in withdrawal liability; $2,345.74 in interest through November 13, 2020; $9,329.60 in liquidated

damages; $9,080.00 in attorneys' fees; and $400.00 in costs).

I.      Background

The Fund is an "employee pension benefit plan," an "employee benefit plan," and a

"multiemployer plan" within the meaning of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 4201, *et seq*. The Trustees are the Fund's sponsors and fiduciaries for

purposes of that statute. MIC is an employer under ERISA and was at some time in the past a

participating employer in the Fund. *See* Complaint ¶¶ 1, 4-6; 29 U.S.C. § 1002(2), (3), (5) (16)(B),

(21), (37) *id.* § 1145.[1]

---

[1] The Complaint neither identifies MIC's business nor specifies how or when MIC became a
participating employer with an obligation to make employee benefit contributions that would give

MIC ended its obligations to make contributions to the Fund on July 22, 2019. The Fund took the position that by doing so, MIC incurred withdrawal liability under ERISA. In a letter dated June 28, 2019, the Fund notified MIC of that liability and demanded a total of $48,806.00 to be paid in 80 quarterly installments of $872.00 beginning on September 1, 2019. *See* Complaint ¶¶ 7, 9.[2] MIC did not make the first payment as demanded. In another letter dated September 6, 2019, the Fund noted that MIC's first payment was past due, notified MIC that it was in default under the applicable provision of ERISA, and warned that a failure to cure the default within 60 days would render MIC liable for the entire amount of withdrawal liability. MIC neither made the payment the

---

rise to the instant claim for withdrawal liability. That is an unusual omission and one I have not previously seen in a complaint asserting an employer's withdrawal liability. Typically, such complaints specify when the defendant employer entered into a collective bargaining agreement that would give rise to such obligations. By omitting such allegations, the Complaint arguably fails to state a viable claim. If the court reaches that conclusion, it must of course deny the motion for default judgment. With some significant reservation, I conclude that the Complaint's description of MIC as "a former participating employer" barely suffices, upon MIC's default, to establish the proposition that MIC once had an obligation to make contributions to the Fund. That said, the omission of more detail – information that the Trustees could easily supply if the proposition is true – needlessly exposes the Trustees to the possibility either that the court will disagree and dismiss the Complaint or that MIC will later lodge a successful objection to this report and recommendation or otherwise successfully challenge any resulting adverse judgment.

[2] The attentive reader will note that the Complaint alleges that the Fund rather anomalously notified MIC of its withdrawal liability 24 days *before* MIC incurred it. *Compare* Complaint ¶ 9 (alleging notification on June 28, 2019) *with id.* ¶ 7 (alleging withdrawal liability as of July 22, 2019). The Trustees do not explain the discrepancy. Here again, the court could justifiably conclude that the discrepancy undermines the presumptive truth of the Complaint's allegations and therefore deny the motion for default judgment and dismiss the insufficient pleading. Although I am again reluctant to excuse the Trustees' needless failure to provide basic information supporting the claim, I conclude that it does not fatally undermine the motion. As explained below, the Trustees must separately plead and prove that MIC incurred withdrawal liability and that the Fund provided MIC with the statutorily required notice. The Complaint makes both allegations. While it seems unlikely that the Fund actually sent the notice to MIC before MIC incurred the liability, there is at least a possibility that it did so in error and was then saved from an embarrassing confrontation when MIC later did incur the liability. Because the tension between the Trustees' allegations does not completely disprove either of them, I am constrained to conclude that they have successfully a viable claim, however dubious the alleged timeline may be.

Fund demanded, cured its default, nor sought any available form of review of the Fund's demand or liability assessment. *See id.* ¶¶ 10-16.

The Trustees filed the Complaint on December 9, 2019, asserting a single ERISA claim and seeking $46,648.00 in withdrawal liability, interest on that amount, liquidated damages, reasonable attorneys' fees, and costs. *See id.* at 4 (prayer for relief). The Trustees served process on MIC on February 11, 2020. *See* DE 6. MIC has never responded. At the Trustees' request, the Clerk entered MIC's default on March 13, 2020. *See* DE 7; DE 9. On March 13, 2020, the Trustees filed the instant motion for default judgment, together with a memorandum of law, proposed judgment, and declarations by the Fund's administrator and counsel (the latter including, as an exhibit, counsel's billing records). *See* DE 10 (notice of motion); DE 11 (supporting memorandum) ("Memo."); DE 12 (proposed order); DE 14 (Reich Decl.); DE 15 (Rumelt Decl.); DE 15-1 ("Billing Records"). By Orders dated May 19, 2020, the court referred the motion to me, and I set a deadline for the parties to make their final submissions on the motion. On June 3, 2020, the Trustees submitted supplemental declarations by the Fund's administrator, actuary, and counsel. *See* DE 18 (Reich Supp. Decl.); DE 19 (Voelker Decl.); DE 20 (Rumelt Supp. Decl.). MIC made no submission and has never appeared in the action.

II.    Discussion

A.    Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not suffice to establish liability on its claims; a default does not establish conclusory allegations, nor does

it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g., Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 & n.17 (2d Cir. 2015); *Taizhou Zhongneng Import & Export Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159.

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *House v. Kent Worldwide Mach. Works., Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Even when the defendant defaults, damages must be based on admissible evidence. *House*, 359 F. App'x at 207. Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

B.      Liability

If an employer who is required to contribute to a plan withdraws from that plan, the employer becomes subject to withdrawal liability. *See* 29 U.S.C. § 1381(a). An employer "completely withdraws" from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan or (2) permanently ceas[ing] all covered operations under the plan." *See* 29 U.S.C. § 1383(a). The Complaint adequately alleges, and MIC's default establishes, that MIC permanently ceased to have an obligation to contribute under the plan on July 22, 2019, and thereby incurred withdrawal liability. Complaint ¶ 7.

In order to recover for withdrawal liability from an employer, a plan must notify the employer of the amount of liability, include with the notice a schedule for payment, and demand

4

payment in accordance with the included schedule. *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988); *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 223 (E.D.N.Y. 2009) (citing 29 U.S.C. § 1399). An employer may, within 90 days of receipt of the notice, request review of the withdrawal determination; any unresolved dispute concerning the plan's determination of liability must be addressed through arbitration. 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1). If no arbitration hearing is initiated within the statutorily designated timeframe, then the plan's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. 29 U.S.C. § 1401(b)(1). Indeed, no supporting documentation is required to support a finding of withdrawal liability if the defendant fails to initiate arbitration. *See, e.g., Rao v. Prest Metals*, 149 F. Supp. 2d 1, 9-10 (E.D.N.Y. 2001) ("ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability."); *see also Trs. Of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011); *Bd. of Trs. of the Private Sanitation Union Local 813 Pension Fund v. Metro Demolition Contracting Corp.*, 2010 WL 5621275, at *3 (E.D.N.Y. Sept. 17, 2010) (report and recommendation), *adopted*, 2011 WL 197588 (E.D.N.Y. Jan. 20, 2011).

The Complaint adequately alleges, and the defendants' default establishes, that MIC completely withdrew from the Fund, that it was properly notified of its withdrawal liability and payment obligations, and that it did not seek review of the assessment. *See* Complaint ¶¶ 9-14. In addition, after MIC failed to make timely payment of the first instalment of its withdrawal liability, the Fund gave the company 60 days to cure and warned of the consequences of default. *See id.* ¶ 11. MIC failed to respond or cure. *See id.* ¶¶ 14, 16. Those facts suffice to establish MIC's liability on the Complaint's sole cause of action.

C.    Relief

A fiduciary who successfully sues to enforce the provisions of a plan in the circumstances here is entitled to recover the unpaid contributions, interest on those contributions, an additional amount of liquidated damages, reasonable attorneys' fees, and litigation costs. *See* 29 U.S.C. § 1132(g)(2). I address each remedy in turn below.

1.    Damages

The Trustees seek to recover unpaid withdrawal liability in the amount of $46,648.00. The record need not support the Trustees' calculation of withdrawal liability because MIC's liability arises from its failure to respond to earlier demands and as a result, the amount of withdrawal liability demanded became due and owing. *See, e.g., Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, 2009 WL 982424, at *4 (E.D.N.Y. Apr. 10, 2009). MIC has thus waived its right to contest the amount of withdrawal liability, and I therefore respectfully recommend an award of $46,648.00.

2.    Interest

The Trustees seek an award of interest on the outstanding withdrawal liability for the period from September 1, 2019 (when MIC failed to pay the required first instalment of the amount due) through the entry of judgment. ERISA provides for such relief. *See* 29 U.S.C. § 1399(c)(5). The applicable rate is determined quarterly based on the prime rate as of the 15th day of the month before the applicable period. *See* 29 C.F.R. § 4219.32.

The Trustees have accurately calculated that interest accrued in the total amount of $1,545.22 from September 1, 2019, through May 1, 2020. *See* Reich Decl. ¶ 7; DE 14-3 (Reich Decl. Ex C). They also correctly calculated that, as of the date of their motion, interest was continuing to accrue at a daily rate of $5.50, based on the fact that the prime interest rate as of March 15, 2020,

was 4.25 percent annually. *See id.* However, the prime rate dropped to 3.25 percent annually on

March 16, 2020, and that rate remains in effect as of this writing. *See* Historical Prime Rate,

https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited Oct. 29,

2020). Applying that rate of interest to the period from July 1 through November 13, 2020 (the

earliest likely date for entry of judgment after allowing time for objections to this report and

recommendation) produces a total of $2,435.74 in accrued interest, as summarized in the following

chart. I therefore respectfully recommend an interest award in that amount.

| Period start | Period end | Prime rate | Period rate (R) | Principal (P) | Interest (R*P) |
|---|---|---|---|---|---|
| 9/1/19 | 9/30/20 | 0.055000 | 0.004583 | $46,648.00 | $213.80 |
| 10/1/19 | 12/31/19 | 0.052500 | 0.013125 | $46,648.00 | $612.26 |
| 1/1/20 | 3/31/20 | 0.047500 | 0.011875 | $46,648.00 | $553.95 |
| 4/1/20 | 6/30/20 | 0.042500 | 0.010625 | $46,648.00 | $495.64 |
| 7/1/20 | 9/30/20 | 0.032500 | 0.008125 | $46,648.00 | $379.02 |
| 10/1/20 | 10/31/20 | 0.032500 | 0.002708 | $46,648.00 | $126.34 |
| 11/1/20 | 11/13/20 | 0.032500 | 0.001174 | $46,648.00 | $54.75 |
| Total | | | | | $2,435.74 |

### 3.    Liquidated Damages

ERISA provides for an additional award of liquidated damages equal to the greater of the

accrued interest or 20 percent of the unpaid contributions. *See* 29 U.S.C. § 1332(g)(2)(C). The former

amount is $2,435.74, the latter is one-fifth of $46,648.00, or $9,329.60. I therefore respectfully

recommend an award of liquidated damages in the amount of $9,329.60.

### 4.    Attorneys' Fees

The Trustees seek reimbursement of $9,080.00 in attorneys' fees for 22.7 hours of work by

attorneys Owen M. Rumelt ("Rumelt") and Charles Pergue ("Pergue"), each of whom is a partner in

the law firm that represents the Trustees and each of whom has decades of litigation experience. *See*

Rumelt Decl. ¶¶ 3-6; Kary Cane, LLP, https://www.carykanelegal.com/attorney/charles-pergue

(last visited Oct. 29, 2020). ERISA mandates an award of reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2)(D); *Finkel v. Nat'l Maint., Inc.*, 2013 WL 5533066, at *7 (E.D.N.Y. Oct. 4, 2013).

Courts in this circuit assess fee applications using the "lodestar method," which multiplies the reasonable hourly rate by the reasonable number of hours expended. *See Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010). Courts in this district typically approve hourly rates of $300 to $400 for law firm partners. *See Alvarez v. Sterling Portfolio Investment, LP*, 2017 WL 8790990, at * 8 (E.D.N.Y. Dec. 13, 2017) (collecting cases). The Trustees seek hourly rates of $400.00 for both of their attorneys. *See* Rumelt Decl. ¶ 6. Although that is at the top of the applicable range, the request is reasonable in light of the attorneys' experience. I respectfully recommend that the court approve those rates.

The Trustees seek reimbursement for 22.1 hours of work by Rumelt and 0.6 hours by Pergue. *See* Rumelt Decl. ¶ 6; Billing Records. Here again, the amount claimed is at the high end of what courts in this district typically approve in comparable cases, but not so high as to be unreasonable. *See, e.g., Gesualdi v. Toretta Trucking, Inc.*, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (collecting ERISA default judgment cases approving reasonable hours in the range of 17.7 to 25.05 hours). Moreover, the Billing Records reflect no obvious inefficiency. I therefore respectfully

recommend that the court grant the Trustees' request for an award of $9,080.00 in reasonable attorneys' fees.

> 5.    Costs

ERISA also provides for the recovery of costs associated with the litigation. *See* 29 U.S.C. § 1132(g)(2)(D). The Trustees request reimbursement of the $400.00 filing fee, which the record establishes they have paid. *See* Rumelt Decl. ¶ 8; DE 1. I therefore respectfully recommend that the court award litigation costs in the amount of $400.00.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court enter default judgment in the total amount of $67,893.34 (consisting of $46,648.00 in withdrawal liability; $2,345.74 in interest through November 13, 2020; $9,329.60 in liquidated damages; $9,080.00 in attorneys' fees; and $400.00 in costs).

IV.    Objections

I respectfully direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than November 2, 2020. Any objections to this Report and Recommendation are due by November 12, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

> SO ORDERED.

Dated:  Brooklyn, New York
        October 29, 2020

                                                        _____/s/_____
                                                        James Orenstein
                                                        U.S. Magistrate Judge